### In re WEILL.

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

ATTORNEY AND CLIENT (§ 44*)—DISBARMENT—GROUNDS.

Where an attorney advised and procured a client to invest trust funds in a real estate speculation in which the attorney was interested, made false representations to the client as to the purchase price of the real estate, and misappropriated moneys given him by the client for investment in real estate by converting it to his own use, he will be disbarred.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

Charges of professional misconduct were submitted by the Association of the Bar of the City of New York against Moses Weill, an attorney at law. Respondent disbarred.

See, also, 156 App. Div. 904, 141 N. Y. Supp. 1150.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

E. Crosby Kindleberger, of New York City, for petitioner.
George Edward Joseph, of New York City, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

INGRAHAM, P. J. The respondent was admitted to practice in November, 1901. The Association of the Bar submitted charges against the respondent of professional misconduct as follows: That one Gannon as trustee for himself and others, owners of real property, sold the property and received therefor about $4,600; that the respondent was Gannon's attorney, and had knowledge of all the facts; that after Gannon received this money the respondent represented to Gannon that one O'Brien had purchased for $25,500 certain real property in Westchester county; that of that sum $17,500 had been paid in cash, one-half of which had been contributed by the respondent, and in return therefor the respondent had a half interest in the property; that these representations were false, and were known by the respondent to be so at the time he made them; that relying on these false representations Gannon, without the knowledge or consent of the other persons interested in the fund, gave to the respondent $2,550 of the money which Gannon held as trustee for himself and others, in return for which the respondent agreed in writing that Gannon should have an interest in the property equal to eight twenty-sevenths of one-half of the property, and that when the property was sold the respondent would pay Gannon his proportion of the amount realized from the sale; that subsequently, and in October, 1907, the respondent, falsely representing that the property was worth $1,500 an acre, obtained from one Taylor the sum of $1,000, for which Taylor was to get one-ninth of one-half of the profits realized from the sale; that subsequently the respondent transferred the property to one Levy without receiving any consideration therefor, the property was sold under foreclosure, and neither Gannon nor Taylor ever received anything.

The respondent interposed an answer to these charges, denying that he had ever talked with Gannon about any investments in real estate, but that all of such transactions were had with the respondent's brother; that on June 11, 1907, he admits Gannon gave a check to the respondent's brother for $1,500, to be invested in certain real estate transactions in which the respondent and his brother Isaac were then engaged; that thereafter, and on June 20th, Gannon gave a check for $500 to the order of the firm, which was to be used in another real estate transaction; and that on June 27, 1907, Gannon gave a check to the order of the respondent for $250, which was to be invested in the purchase of real estate in Williamsbridge. The respondent denied that he knew at the time that the money paid to his brother or himself was trust money realized from the sale of the property of which Gannon was the administrator. Then the respondent, after stating certain details of the transaction, states that he has felt under a moral obligation to Gannon and Taylor, and has already repaid to Taylor $750, and to Gannon about the sum of $2,000, and that Gannon has notes for the remainder, but that he has never felt himself under any legal liability to repay either the said Gannon or Taylor.

The case was submitted to the official referee, who now makes his report, from which it appears that the respondent and his brother, acting as attorneys for Gannon, resisted the probate of the will of

one Anna Eliza Lalor, represented Gannon and other heirs at law on an appeal to the Appellate Division, and subsequently, on a retrial and another appeal in the same proceeding, appeared for Gannon and the other heirs at law; that in 1902 Gannon was appointed temporary administrator to take possession of certain real estate in Kings county and deposit all moneys of the estate in the People's Trust Company, said order being drawn by the respondent's firm; that in April, 1907, the respondent was familiar with all the proceedings in the Lalor estate, and knew that his brother and partner had advised Gannon to procure a deed from his brothers and sisters giving him the title to said property in Kings county; that the said deed was delivered and duly recorded on May 8, 1907, and that the respondent knew that Gannon held such real estate as trustee for himself and his brothers and sisters; that subsequently Gannon sold the property for the sum of $4,000, and out of the purchase price the respondent's brother and partner retained $1,500 in cash, giving Gannon a receipt reading, "To be held in re Lalor Estate," and the rest of the money was paid over to Gannon; that after Gannon got this money the respondent became interested with one O'Brien in the purchase of some real estate in Westchester county, whereupon a contract was made on June 20, 1907, by which O'Brien, the respondent, and one Fannie Weill agreed to purchase the property for $900 an acre, and $1,000 cash was paid down and $7,000 was contracted to be paid, with a purchase-money mortgage for the balance; that the respondent represented to Gannon that the property had cost $1,500 an acre, or about $25,000 in all, that $3,000 or $4,000 had been paid in cash, and that if Gannon would contribute money to help pay the additional cash he (Gannon) would be given an interest in the said property; that all the respondent paid towards the purchase price of the property was $950, using the remainder of the money that he had obtained from Gannon for his own purposes; that afterwards the respondent was unable to make cash payments to the vendor, but O'Brien made them, and to procure money to meet this obligation he obtained from one Levy, his brother-in-law, a mortgage for $8,000 on certain lots of Levy in Mt. Vernon, which mortgage he delivered to O'Brien, representing to Levy that the property had cost $32,000, of which they had paid in cash $24,000, and there was a mortgage of $8,000 on the property, and that, of this $24,000, $16,000 had been already paid, and they merely needed $8,000 to complete the purchase price; that subsequently and in October, 1907, the respondent induced said Levy to sign a second mortgage of $10,000 to purchase the one-third interest of O'Brien in the property; that upon Gannon getting nervous, and wanting some written instrument showing his interest in the property, the respondent drew up and signed a false and fraudulent statement, in which he stated that the property had been purchased for $25,500, that $17,500 cash had been paid, that the respondent had contributed $8,650 of this amount, and that of this Gannon had contributed $2,550, and was therefore entitled to eight twenty-sevenths of one-half of any amount that may be realized from any sale of the property after deducting the necessary expenses; that the said respondent was also interested in an-

other piece of property at 222d street and White Plains avenue, which was owned by a corporation of which the respondent and O'Brien were stockholders and directors; that the mortgages on both these properties were foreclosed, and all the interest of the parties wiped out; that on November 24, 1907, the respondent obtained from one Taylor $1,000, to be placed in the Mt. Pleasant property; that the respondent never placed any of this $1,000 in that property, but appropriated it to his own use; that after proceedings were threatened against the respondent he paid back to Taylor and Gannon various sums of money from time to time, and in July, 1912, gave Gannon a promissory note for the balance of the money contributed.

The referee further reports that in testifying before him the respondent made a number of false statements in attempting to explain his actions, and the referee therefore found that the respondent has been guilty of misconduct in advising and procuring a client to improperly invest trust funds in a real estate speculation, of making false representations to Gannon, a client, by which he obtained money from Gannon, and of misappropriating moneys given to him by Gannon for investment in real estate by converting it to his own use.

The respondent seeks to throw all the burden of this transaction upon his brother, Isaac Weill; but an examination of this testimony has satisfied me that the referee was right, and his report should be approved. But one conclusion can be drawn from this whole transaction, and that is that these people were deliberately swindled by the respondent, and he is not a proper person to longer remain a member of the profession.

The respondent is therefore disbarred. All concur.